UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TINA M. COOK, | ) | Case No.  1:08 CV 1877 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Tina M. Cook filed this appeal seeking judicial reversal under 42 U.S.C. §405(g) from the administrative denial of disability insurance benefits.  At issue is the ALJ's decision dated December 28, 2007, which stands as the final decision of the Commissioner.  See 20 C.F.R. §404.1481.  The parties consented to the jurisdiction of the Magistrate Judge for all further proceedings including entry of judgment in accordance with 28 U.S.C. §636(c) and Rule 73 of the Federal Rules of Civil Procedure.

Cook was 48 years of age at the time of the administrative decision, had a 10th grade education and past relevant work experience in light to heavy semi-skilled factory jobs (Tr. 97-102, 132-35, 309). She attributes her disability to back surgeries following an incident in December 1999, when she injured her back. (Tr. 186). Under the care of Dr. Viau, Cook underwent lumbar fusion in February 2002, and this was repeated in August 2004 (Tr. 159-64). In August 2004 her condition was status post lumbar fusion L5-S1, grade I spondylolisthesis at  L4-5, retrolisthesis at L3-4 and spinal canal stenosis (Tr. 163).  Cook alleges onset of disability on August 30, 2004. (Tr. 54).

1:08 CV 1877                                             2

An ALJ held an administrative hearing at which a medical advisor and vocational expert testified (Tr. 272-318). After reviewing the records, the ALJ determined that Cook could no longer perform her past relevant work, but based on a residual functional capacity for sedentary work with sit-stand option every 30 minutes, the vocational expert testified that Cook could work as a quality control inspector, inspector/tester and weigher/measurer/record keeper, jobs which exist in substantial numbers.

Cook challenges these conclusions arguing that the residual functional capacity used by the ALJ conflicts with the opinion from her treating physician, Dr. Viau. Inconsistency between the ALJ's findings and Dr. Viau's opinion and a restriction against bending  become problematic in this matter, and defeat the Commissioner's contention that the ALJ's decision was supported by substantial evidence.

*Standard of Review:*

The issues before this court must be resolved under the standard whether there is substantial evidence in the record to support the Commissioner's decision.  Substantial evidence is evidence that a reasonable mind would accept as adequate to support the challenged conclusion.  *Casey v. Secretary of Health & Human Services*,  987 F.2d 1230, 1233 (6th Cir. 1993);  *Wyatt v. Secretary*, 974 F.2d 680, 683 (6th Cir. 1992); *Born v. Secretary*, 923 F.2d 1168, 1173 (6th Cir. 1990); and see *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court may "not inquire whether the record could support a decision the other way").

1:08 CV 1877                                    3

*Sequential Evaluation and Meeting or Equaling the Listing of Impairments:*

The Commissioner follows a 5-step review process known as the sequential evaluation. This evaluation begins with the question whether the claimant is engaged in substantial gainful activity and then at the second step whether there is a medically severe impairment.  See §404.1520(a)(4)(I) and (ii) and §416.920(a)(4)(I) & (ii). At the third step of a disability evaluation sequence the issue is whether the claimant has an impairment which meets or equals a listed impairment from the Listing of Impairments of Appendix 1.  See 20 C.F.R. §404.1520(a)(iii) and (d); §416.920(a)(iii) and (d).  If an impairment exists which meets the description from the listing or is its equivalent, the claimant is deemed disabled at that point without consideration of age, education or prior work experience.  See *Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987); *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (Once a claimant has met this burden that ". . . his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without determination whether he can perform his prior work or other work.")."At the fourth step of the sequential approach described in 20 C.F.R. §404.1520, it is the claimant's burden to show that [he] is unable to perform her previous type of work." *Dykes ex rel. Brymer v. Barnhart*, 112 Fed. Appx. 463, 467, 2004 WL 2297874, at *3 (6th Cir. 2004)); *Studaway v. Sect'y of Health and Human Services*, 815 F.2d 1074, 1076 (6th Cir. 1987). Once the administrative decision-maker determines that an individual cannot perform past relevant work, then the burden of going forward shifts to the Commissioner at the fifth step to demonstrate the existence of types of employment compatible with the individual's disability.  *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Cole v. Secretary*, 820

1:08 CV 1877                                        4

F.2d 768, 771 (6th Cir. 1987); *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990); *Her v. Comm'r of Soc. Sec*., 203 F.3d 388, 391-92 (6th Cir. 1999).


*Opinion from the treating physician:*

Dr. Viau, Cook's treating physician, is responsible for both Cook's lumbar fusion surgeries and Cook's aftercare. Dr. Viau opined on August 8, 2007, that in an 8-hour workday Cook could lift/carry up to 10 pounds occasionally, and could sit, stand and walk 3 hours each "with rests," "never" bend, squat, crawl or climb, and never use her feet for repetitive movements such as in operating foot controls. (Tr. 263). The doctor included environmental restrictions of no work around unprotected heights, no work around moving machinery, no exposure to marked changes in temperature and humidity, no driving automotive equipment, and no exposure to dust, fumes and gases. (Tr. 263).


*Medical Advisor's Testimony:*

The medical advisor specifically referred to reports of Cook's aftercare from the treating physician for his testimonial conclusion that Cook's impairments did not meet or equal a listed impairment. (Tr. 299-302). These treatment notes present a patient who can ride a bicycle "to some degree," and sit on her riding mower (Tr. 176), walk 1 mile every 2 to 3 days, and vacuum. (Tr. 177). The medical advisor testified that Cook can sit, but is experiencing arthritic type pain, which is bothersome when she gets up but she would feel better when she began to walk. (Tr. 302). This expert elaborated that arthritic pain continues after surgery and that patients are not normally told about that. (Tr. 304). The expert conceded that there is frequent arthritic pain located in the joints,

1:08 CV 1877                                       5

but this is minimized "by doing a [spinal] fusion and causing the back to be more inflexible." (Tr. 304).  The medical advisor was not asked for his opinion on Cook's residual functional capacity.

*State Agency Physicians' Residual Functional Capacity Assessment:*

The residual functional capacity assessment in the record from non-examining state agency physicians bears little semblance to Dr. Viau's opinion. This assessment concluded that Cook could perform light exertion with occasional lift/carrying of 20 pounds, "unlimited" use of hand or foot controls, no climbing of ladders, ropes or scaffolds,  "occasional" balancing, stooping, kneeling, crouching, and crawling, and that there were no restrictions against work around unprotected heights, moving machinery, marked changes in temperature or humidity, or exposure to dust and fumes. (Tr. 168-71).

*ALJ's Finding on Cook's Residual Functional Capacity:*

The ALJ  credited Dr. Viau's opinion to "some extent." (Tr. 18). The ALJ accepted the doctor's  restriction to sedentary exertion and accepted the hazards of avoiding moving machinery and working in unprotected heights. (Tr. 16). However, the ALJ rejected the balance of Dr. Viau's findings for the reasons that they were unsupported by medical evidence and contrary to Cook's admitted capabilities. The ALJ, though, provided only *two* instances to support this conclusion, stating that there was no significant respiratory impairment (presumably striking at Dr. Viau's no exposure to dust and fumes) and that Cook drove (presumably striking at the prohibition against driving automotive equipment). (Tr. 18).

1:08 CV 1877                                        6

The ALJ focused on the reported activities from Dr. Viau's medical notes (Tr. 18, 176-77),

and the residual functional capacity assessment from  non-examining state agency physicians. (Tr.

18, 168-174).  The ALJ found that Cook had a residual functional capacity for sedentary work with

the need to alternate positions between sitting and standing every 30 minutes, and that Cook can

never climb ladders, ropes or scaffolds, but can "occasionally climb stairs and ramps, balance, stoop,

kneel , crouch and crawl." (Tr. 16).  The ALJ did not directly address  Dr. Viau's prohibitions

against bending or squatting. (See Tr. 263).  Instead, the ALJ obliquely attacked this conclusion by

finding that Cook can "occasionally climb stairs and ramps, balance, stoop, kneel,  crouch and

crawl" which appears to be derived from the assessment from the non-examining state agency

physicians (Tr. 16, 169).


*Argument:*

Cook argues that a residual functional capacity for sedentary work which allows for

alternating between sitting and standing every 30 minutes does not limit the individual to 3 hours

of sitting during the workday. This is correct, the ALJ's finding equates with 4 hours of sitting and

4 hours of standing during an 8-hour  workday. Obviously, this did not fully comport with Dr.

Viau's 3/3/3 restrictions. Cook argues that sedentary work requires sitting a total of 6 hours of an

8-hour workday, so Cook cannot perform sedentary work, as defined by Social Security Ruling 83-

10.


Sedentary work defined by administrative regulation as:

. . . . work [which] involves lifting no more than 10 pounds at a time and
occasionally lifting or carrying articles like docket files, ledgers, and small tools.

1:08 CV 1877                                                    7

> Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567 (a).

This regulation does not quantify the amount of sitting required. That missing component

is set forth in SSR 83-10, which adds that 6 hours of sitting are required for sedentary work: [1]

> Sedentary work. The regulations define sedentary work as involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. By its very nature, work performed primarily in a seated position entails no significant stooping. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions.

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and **sitting should generally total approximately 6 hours of an 8-hour workday.** Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.(emphasis supplied).

> TITLES II AND XVI: DETERMINING CAPABILITY TO DO OTHER WORK-THE MEDICAL-VOCATIONAL RULES OF APPENDIX 2, SSR 83-10, 1983 WL 31251, at *5.

Cook is correct that under the ALJ's determination of 30 minute intervals between sitting

and standing, Cook would be seated 4 hours and standing 4 hours of an 8-hour workday. This is less

---

[1]   Social Security Rulings "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" that have been adopted.  20 C.F.R. 402.35(b)(1). See *McClanahan v. Comm'r of Soc. Sec*. 474 F.3d  830,  834 (6ᵗʰ Cir. 2006), citing *Blankenship v. Bowen*, 874 F.2d 1116, 1119 n. 9 (6ᵗʰ Cir. 1989).

1:08 CV 1877                                                    8

than the 6 hours needed according to the foregoing administrative rule's description of sedentary

work, and this also exceeds the 3-hour limit from Dr. Viau.  Cook thus maintains that the ALJ lacked

substantial evidence to find that she could perform sedentary work.

The Commissioner responds that SSR 96-9p clarified SSR 83-10 to state that the 6-hour

standard is only a guideline and not a requirement. This ruling adds:

> **Sitting**: In order to perform a full range of sedentary work, an individual must be
> able to **remain in a seated position for *approximately* 6 hours of an 8-hour
> workday**, with a morning break, a lunch period, and an afternoon break at
> approximately 2-hour intervals. If an individual is unable to sit for a total of 6 hours
> in an 8-hour work day, the unskilled sedentary occupational base will be eroded. The
> extent of the limitation should be considered in determining whether the individual
> has the ability to make an adjustment to other work. See *Alternate sitting and
> standing* below.
>
> \* \* \* \*
>
> **Alternate sitting and standing:** An individual may need to alternate the required
> sitting of sedentary work by standing (and, possibly, walking) periodically. Where
> this need cannot be accommodated by scheduled breaks and a lunch period, the
> occupational base for a full range of unskilled sedentary work will be eroded. The
> extent of the erosion will depend on the facts in the case record, such as the
> frequency of the need to alternate sitting and standing and the length of time needed
> to stand. The RFC assessment must be specific as to the frequency of the individual's
> need to alternate sitting and standing. **It may be especially useful in these
> situations to consult a vocational resource in order to determine whether the
> individual is able to make an adjustment to other work.** (emphasis supplied).

> TITLES  II  AND  XVI:  DETERMINING  CAPABILITY  TO  DO  OTHER
> WORK-IMPLICATIONS OF A RESIDUAL FUNCTIONAL CAPACITY FOR
> LESS THAN A FULL RANGE OF SEDENTARY WORK, SSR 96-9p, 1996 WL
> 374185, at \*6 -7.

The Commissioner's response opens the matter to vocational expert testimony. The

Commissioner argues that a vocational expert reviewed the file and understood Cook's limitations

1:08 CV 1877                                           9

to ascertain the extent of erosion of the occupational base for sedentary jobs and to determine what

jobs were available that could accommodate Cook's inability to perform the full range of sedentary

work. Resolution of the issue whether the ALJ's decision is supported by substantial evidence has

now branched out from the question of whether the ALJ gave due deference to the opinion of the

treating physician to vocational issues which the Commissioner has insisted on inviting.


*Vocational Expert's Testimony:*

On cross-examination, the vocational expert testified that the sedentary  jobs identified in

her testimony were quality control inspector, inspector/tester and weigher/measurer/ record keeper,

but these were "bench  jobs" performed in a laboratory where the worker sits on a stool. (Tr. 315-

17).  The vocational expert explained that if the worker needs to work from a standing position, the

worker would need to "bend" to stay on task.  (Tr. 317).


*Three Conflicts are now in Issue:*

First, there is a  conflict between Dr. Viau's restriction to 3hours of sitting and the ALJ's

finding of 4 hours of sitting. [2]  Second, there is a conflict between Dr. Viau's opinion that Cook

could "never" bend, squat, etc., and the determination that Cook could perform "occasional"

balancing, stooping, kneeling, crouching, and crawling. Third, since the Commissioner has invited

vocational factors into consideration,  there is internal inconsistency in the ALJ's findings. Cook

would need to bend over her bench a total of 4 hours of the workday while she remained standing.

---

[2] Dr. Viau's opinion of Cook being on her feet 6 hours, as opposed to the ALJ's finding of 4 hours appears to be a moot issue.

1:08 CV 1877                                        10

However, the ALJ found that Cook could perform postural activities, "occasionally." [3] (Tr. 16, 19).

"Occasionally" means occurring from very little up to one-third of the time. (See SSR 83-10 quoted

previously). This calculates to doing such activities a total of 2½ hours each workday.  This amount

of time falls short of the 4 hours that an individual would need to bend (or "stoop") over a bench to

continue working at jobs normally performed from a seated position, according to the vocational

expert's testimony.[4]


In determining the question of substantiality of the evidence, reports of physicians who have

provided treatment over a long period of time are entitled to greater weight than the reports of

physicians employed by the government for the purpose of defending against a claim for disability.

See 20 C.F.R. §404.1527(d)(2); §416.927(d)(2).; 20 C.F.R. §404.1527(d)(3); §416.927(d)(3). This

is commonly known as the "treating physician rule." See *Rogers v. Commissioner of Soc. Sec.*, 486

F.3d 234, 242 (6th Cir. 2007); *Wilson* v. *Commissioner of Soc. Sec.*, 378 F.3d 541, 544(6th Cir.

2004). The ALJ must give the opinion from the treating source controlling weight if she finds the

opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and

"not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Commissioner,*

378 F.3d 541, 544 (6th Cir. 2004) quoting 20 C.F.R. §404.1527(d)(2) and §416.927(d)(2). The ALJ

is not bound by a conclusory opinion which is unsupported by detailed objective criteria, or when

there is substantial medical evidence to the contrary.  *Cutlip v. Secretary*, 25 F.3d 284, 286 (6th Cir.

---

[3] See 20 C.F.R. §404.1545(b) describing physical abilities to include manipulative or postural functions, "such as reaching, handling, stooping or crouching."

[4] Cook would be required to engage in these postural activities "frequently." "Frequent' means occurring from one-third to two-thirds of the time." See SSR 83-10, 1983 WL 31251 at *6.

1:08 CV 1877                                              11

1994); *Cohen v. Secretary*, 964 F.2d 524, 528 (6th Cir. 1992); *King v. Heckler*, 742 F.2d 968, 973

(6th Cir. 1984).

The ALJ stated that Dr. Viau's opinion was not fully credited "because in some areas" it is

contrary to admitted abilities or "wholly unsupported" by the medical evidence. (Tr. 18).  First, in

regard to the ALJ's decision that Cook is  capable of remaining seated 4 hours during the workday,

there is no admitted ability for remaining seated a total of 4 hours each day for, [5]  and  the Dr. Viau's

restriction to 3 hours of daily sitting is not "wholly unsupported" by the medical evidence, but in fact

very close to the ALJ's resolution of Cook's sitting ability.   Second, in regard to "bending,"  there

is no admitted ability for this activity, [6] and Dr. Viau's prohibition is consistent with the medical

advisor's testimony that lumbar fusion produces spinal inflexibility.   In short, the ALJ failed to

provide "good reasons" to discount this opinion from a treating physician. See *Wilson v.*

*Commissioner of Soc. Sec.*  378 F.3d at 544.

*Vocational Expert's Testimony:*

The third conflict is  in regard to the vocational expert's response based on a hypothetical

4/4 split between sitting and standing with "occasional climbing of stairs, occasional balancing,

stooping." (Tr. 310).   This hypothetical did not quantify ability to bend. (See Tr. 314). The jobs

---

[5]  Cook testified that her back pain was aggravated by standing, walking or sitting "too long" and that she spent 5 hours of the day in a recliner with a heating pad. (Tr. 286).

[6]  Cook testified that she had difficulty dressing. (Tr. 287). She stated that she has trouble with underwear and socks and must wear slip-on shoes, and her husband helps her dress. (*Id.*). An adult daughter lives with her and does the housework, cooking, and loading the dishwasher. (Tr. 288).

1:08 CV 1877                                    12

identified by the vocational expert required the person "to have[to] bend a little to stay on task." (Tr.

317).


A vocational expert's opinion cannot constitute substantial evidence unless the expert

precisely considers the particular physical and mental impairments affecting claimant. *Varley v.*

*Secretary*, 820 F.2d 777, 779 (6th Cir. 1987); *McMillan v. Schweiker*, 697 F.2d 215, 221 (8th Cir.

1983). *Howard v. Commissioner*, 276 F.3d 235, 239 (6th Cir. 2002). "There must be 'a finding

supported by substantial evidence that a claimant has the vocational qualifications to perform

specific jobs.'" *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987); *O'Banner v. Secretary*, 587

F.2d 321, 323 (6th Cir. 1978). The hypothetical question posed to the vocational expert must

incorporate those limitations accepted as credible by the finder of fact. *Casey v. Secretary of Health*

*and Human Services,* 987 F.2d 1230, 1235 (6th Cir.1993). There was an apparent omission of

Cook's bending abilities in the hypothetical, and as previously explained, 4 hours of standing while

bending would require "frequent," not "occasional" ability for this postural limitation. The

vocational expert's responses, thus, were inaccurate.


*Remand:*

Congress has authorized remand for reconsideration or reversal under the fourth sentence

of 42 U.S.C. §405(g). See *Faucher v. Secretary of HHS*, 17 F.3d 171, 174-75 (6th Cir. 1994), citing

*Sullivan v. Hudson*, 490 U.S. 877, 880, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989). Generally, when

one of the ALJ's factual findings is not supported by substantial evidence, recourse is through a

remand under the fourth sentence. *Faucher*, 17 F.3d at 175-76. The Commissioner's decision may

1:08 CV 1877                                        13

be reversed and benefits awarded only when the Commissioner's decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking. *Newkirk v. Shalala*, 25 F.3d 316 (6th Cir. 1994); *Faucher v. Secretary*, 17 F.3d at 176;  *Mowery v. Heckler*,  771 F.2d 966, 973 (6th Cir. 1985); and see *Lashley v. Secretary*, 708 F.2d 1049 (6th Cir. 1983).

Cook has established that the ALJ lacked substantial evidence to support rejection of Dr. Viau's residual functional capacity and the burden had shifted onto the Commissioner to demonstrate the existence of types of employment compatible with the individual's disability. See *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Cole v. Secretary*, 820 F.2d 768, 771 (6th Cir. 1987); *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999). Cook argues only that the ALJ credited and accepted the treating physician's opinion for less than the capability for the full range of sedentary work.  "A vocational expert can testify that a claimant is limited to less than a full range of sedentary work and nonetheless find that the claimant can perform a significant number of jobs in the economy." *Jones v. Comm'r of Social Security,* 23 Fed.Appx. 339, 340 (6th Cir. Oct. 25,2001)(citing *Bradley v. Sec'y of HHS*, 862 F.2d 1224, 1228 (6th Cir.1988); *McCormick v. Sec'y of HHS*, 861 F.2d 998, 1002 (6th Cir.1988)).

Moreover, there was some support for the other restrictions in the decision from the non-examining state agency physicians. The ALJ's decision was not clearly erroneous and proof of disability was neither strong nor one-sided.

1:08 CV 1877                                        14

### *CONCLUSION*

The issues before this court must be resolved under the standard of whether the determination is supported by substantial evidence of record.   "Under 42 U.S.C. §405(g), the ALJ's findings are conclusive as long as they are supported by substantial evidence." *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 851 (6th Cir. 1986) (stating that this court's review "is limited to determining whether there is substantial evidence in the record to support the findings")." *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).   Based on the arguments presented, the record in this matter and the applicable law, the undersigned finds that the Commissioner's determination denying disability insurance benefits was not supported by substantial evidence and must be reversed and remanded under the fourth sentence of 42 U.S.C. §405(g) for more complete evaluation of the opinion from the treating physician and more complete vocational consideration in accordance with the administrative regulations and rules.


                                            s/James S. Gallas
                                        United States Magistrate Judge


Dated September 17, 2009